FILED
2009 Nov-05 PM 01:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2009 NOV -3 A 9:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DONEGAL MUTUAL INSURANCE COMPANY )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TURN KEY SERVICES, INC. t/a )<br>APARTMENT SERVICES, and )<br>PLANTATION APARTMENTS, LLC )<br>f/k/a RIVER PLANTATION )<br>APARTMENTS )<br>)<br>Defendants. ) | Civil Action No.:<br><br>CV-09-AR-2224-S |

## COMPLAINT FOR DECLARATORY RELIEF

The Complaint of Donegal Mutual Insurance Company (hereinafter "Donegal" or "Donegal Mutual"), for Declaratory Judgment against Turn Key Services, Inc. t/a Apartments Services ("Turn Key") and Plantation Apartments, LLC f/k/a River Plantation Apartments ("Plantation Apartments") respectfully alleges and avers upon information and belief as follows:

### PRELIMINARY STATEMENT

1.  This is an action for declaratory judgment, pursuant to 28 U.S.C. § 2291 and Rule 57 of the Federal Rules of Civil Procedure to determine an actual case or controversy between Donegal Mutual and Turn Key and the parties' respective rights and obligations with respect to Commercial General Liability Policy No. CPP 8062459, which was issued to Turn Key by Donegal

Mutual for the period July 9, 2008 to July 9, 2009.

2. Donegal Mutual seeks a judgment declaring that it has no duty to defend or indemnify Turn Key or pay any insurance proceeds under the Donegal Mutual Policy in connection with the incident described below.

## PARTIES

3. Donegal Mutual is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Marietta, Pennsylvania.

4. Turn Key is an Alabama corporation with a principle place of business in Birmingham, Alabama.

5. Plantation Apartments is an Alabama limited liability company with a principle place of business in Point Clear, Alabama.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs.

7. Venue is proper in the United States District Court for the Northern District, Southern Division of Alabama because the Donegal Mutual Policy at-issue in this declaratory judgment action was issued and delivered in this District and Division.

**GENERAL ALLEGATIONS**

8. Donegal Mutual issued CGL Policy No. CPP 8062459 to Turn Key for the period July 9, 2008 to July 9, 2009.[1]

9. On or about August 1, 2006, Turn Key entered into a contract with Plantation Apartments to perform construction and repair work on the roof of an apartment building or buildings owned by Plantation Apartments and located in Jacksonville, Florida.

10. Turn Key, in turn, subcontracted the majority of the work to a company known, upon information and belief, as Felipe Vila Roofing.

11. The roofing work was completed or substantially completed by Turn Key on or about December 6, 2006.

12. Plantation Apartments was aware of problems with the work performed by Turn Key and its subcontractor, Felipe Vila Roofing, from the outset.

13. Specifically, as early as December of 2006, representatives of Plantation Apartments complained to representatives of Turn Key that the roofing work performed by Turn Key and/or its subcontractors was leaking.

14. Turn Key made attempts to remedy these problems, however, it was terminated in March of 2007, and ordered off the premises.

---

[1] A complete copy of the Donegal Mutual Policy issued to Turn Key is attached hereto as Exhibit A.

15. Work orders beginning in July of 2007 evidence that Plantation Apartments continued to have problems with the Jacksonville complex leaking following the termination of Turn Key in March of 2007.

16. In fact, records show that more than seventy (70) complaints were made regarding water intrusion into the building from the roof between July of 2007 and July or August of 2008.

17. In December 2008, Plantations Apartments then finally filed suit against Turn Key in the Circuit Court of Duval County, Floridaalleging negligence and breach of contract arising out of the aforementioned roofing work.[2]

18. On or about January 7, 2009, Turn Key Services was served with a copy of this lawsuit.

19. Turn Key failed the report the receipt of this loss to Donegal Mutual or any of its agents until March of 2009, at which point the lawsuit had already fallen into default, and judgment entered in favor of Turn Key and against Apartment Services.

20. Upon learning of the suit, Donegal Mutual immediately retained defense counsel on behalf of Turn Key.

21. Additionally, Donegal Mutual issued a reservation of rights letter to Turn Key.

22. In May of 2009, defense counsel retained by Donegal Mutual was able to get the default judgment entered against Turn

---

[2] A complete copy of the underlying lawsuit is attached hereto as Exhibit B.

Key and in favor of Plantation Apartments set aside.

23.  The litigation between Turn Key and Plantation Apartments described above is now ongoing in the Circuit Court of Duvall County, Florida.

24.  As a part of that litigation, Plantation Apartments has hired a third-party engineer, JMG, to do a comprehensive report on recommendations regarding the property. The report documented various degrees of water intrusion and damage, from minor damage to mold and total damage to drywall and interior ceilings. The report documented that after a thorough inspection of the roof areas, it was concluded that water was able to enter the buildings through the following means:

1) Missing or loose gable end louver vents;
2) Flat roof wall flashing;
3) Shingle/rake counter flashing;
4) Improperly installed roof mounted dryer vents;
5) Pipe vents installed that are larger than the pipes that they were flashing;
6) Missing and damaged coping caps on brick end walls and firewalls;
7) Pipe penetrations through the brick gamble walls;
8) Blocked gutters causing water to back up onto the roof;
9) Large cracks in the brick mortar and missing bricks;
10) Minor damage to shingles and damaged roof decking

25.  The report documented that the repair estimates likely total approximately $230k.

**THE DONEGAL MUTUAL POLICY**

26.   Donegal Mutual issued CGL Policy No. CPP 8062459 to Turn Key for the period July 9, 2008 to July 9, 2009. This policy contains the following provisions, coverages, and exclusions

relevant to this action:

    1. Insuring Agreement

        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            (1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

            (2) Our right and duty to defend ends when we have used ip the applicable limit of insurance in the payment of judgements or settlements under Coverages A or B or medica expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless specifically provided for under Supplementary Payments - Coverages A and B.

        b. This insurance applies to "bodily injury" and "property damage" only if:

            (1) the "bodily injury" or

       "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph 1. Of Section II - Who Is an Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, charge or resumption of that "bodily injury" or "property damage" after the end of

the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

2. Exclusions

    b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1) That the insured would have in the absence of the contract or agreement; or

        (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to

the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract" reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(A) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(B) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this applies are alleged.

J. Damage to property

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care,

      custody or control of the insured;

   (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

  Paragraphs (1) (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Remises Rented To You as described in Section III- Limits of Insurance.

  Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

  Paragraph (3) (4) (5) and (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard"

  K. Damage to your Product

 "Property damage" to "your product" arising out of it or any part of it.

  L. Damage to your work

 "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

    M.    Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "your work" arising out of it or property that has not been physically injured, arising out of:

    (1)    A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

    (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**Definitions**

    1.    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

    8.    "Impaired property" means tangible property, other than "your product" or "your work"; that cannot be used or is less useful because:

        a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

        b.    You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

        a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

        b.    Your fulfilling the terms of the contract or agreement.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      1. Products that are still in your physical possession; or

      2. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         A. When all of the work called for in your contract has been completed.

         B. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         C. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b.    Does not include "bodily injury" or "property damage" arising out of:

        1.    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        2.    The existence of tools, uninstalled equipment or abandoned or unused materials; or

        3.    Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to

       occur at the time of the "occurrence" that caused it.

22. "Your work"

    a. Means:

        1. Work or operations performed by you or on your behalf; and

        2. Materials, parts or equipment furnished in connection with such work or operations

    b. Includes:

        1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        2. The providing of or failure to provide warnings or instructions.

IX. KNOWLEDGE OF AN OCCURRENCE, OFFENSE, CLAIM OR SUIT

Subparagraphs a. and b. under paragraph 2. Duties in the event of occurrence, offense, claim or Suit as found in Section IV- Commercial General Liability Conditions are deleted and replaced by the following:

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible notice should include:

        1. How, when and where the "occurrence" or offense took place;

        2.    The names and addresses of any injured persons and witnesses; and

        3.    The nature and location of any injury or damage arising out of the "occurrence" or offense.

This Condition only applies when the "occurrence", offense, claim or "suit" is known to you (if you are an individual) to a partner (if you are a partnership), a manager (if you are a limited liability company), or an officer or insurance magaer of a corporation (if you are a corporation). Knowledge of an "occurrence", offense, claim or "suit" by an agent, servant or "employee" of an insured (other than a partner, manager, officer, or insurance manager) does not imply knowledge by the insured unless the insured has received notice from the agent, servant or "employee".

    b.    If a claim is made or "suit" is brought against any insured, you must:

        1.    Immediately record the specifics of the claim or "suit" and the date received; and

        2.    Notify us as soon as practicable.

You must see to it hat we receive written notice of the claim or "suit" as soon as practicable. Failure by an agent, servant or "employee" of an insured (other than a partner, manager, officer, or insurance manager) to notify us of an "occurrence", offense, claim, or "suit" will not jeopardize your coverage.

**DECLARATORY RELIEF**

27.    The allegations of Paragraphs 1-26 are incorporated by reference herein.

28. An actual, present and existing controversy has arisen between Donegal Mutual and Turn Key exists with respect to the existence and scope of Donegal Mutual's continuing defense and indemnity obligation, if any, in connection with the incident at issue in the Underlying Action.

29. Specifically, Donegal Mutual contends that it has no continuing duty to defend or indemnify Turn Key due to the fact (1) that there was no "occurrence" within the applicable policy period; (2) that Turn Key failed to give notice to Donegal Mutual or its agent as required under the policy; (3) that Turn Key was aware of damage to the Plantation Apartment property prior to the commencement of the Donegal Mutual Policy; (4) that the underlying complaint claims damages based on Turn Key's failure to perform the work called for under the Plantation Apartments contract to specifications; (5) that the underlying complaint claims damages based on Turn Key's "work"; (6) that the "Products-completed operations hazard" exclusion operates to preclude coverage for the damages claimed in the underlying suit; and (7) that the "Damage to Property" (Exclusion J) found in Coverage A of the CGL insuring agreement precludes coverage for the damages claimed in the underlying action.

30. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, Donegal Mutual seeks a judicial declaration of its rights and duties as to Turn Key, if any, under the Donegal Mutual Policy with respect to the property damage claims made by

Plantation Apartments, the issue in the underlying action. Specifically, Donegal Mutual seeks a declaration that the Donegal Mutual Policy does not provide defense and/or indemnity coverage for damages associated with Plantation Apartments's alleged property damage based on the exclusions set forth above and/or any other exclusions contained in the Donegal Mutual Policy.

    31.  In addition to the exclusions addressed herein, Donegal Mutual pleads all other conditions, terms, warranties, limits, definitions and exclusions of the Donegal Mutual Policy which also may be found to be applicable as Donegal Mutual's investigation of this claim continues, and Donegal Mutual reserves the right to amend its Complaint for Declaratory Judgment or assert new or different bases for relief as additional and/or more specific information becomes available.

    WHEREFORE, Donegal Mutual respectfully requests that his Court enter a judgment declaring the rights, status and obligations of the parties under the Donegal Mutual Policy, including a declaration that the Donegal Mutual Policy does not afford coverage for Turn Key's liability arising out of the incident at issue in the Plantation Apartments' action.  Donegal Mutual further requests that this Court provide such further relief as equity and the justice of this cause may require and permit, including but not limited to, an award of costs in favor of Plaintiff, Donegal Mutual.

Respectfully submitted this the 2nd day of November 2009,

/s/ *Anthony N. Fox*
**ANTHONY N. FOX** (FOX003)
ASB-5825-F64A

/s/ *Robert M. Ronnlund*
**ROBERT M. RONNLUND** (RON006)
ASB-5825-F64A
Attorneys for Plaintiff Donegal Mutual Insurance Company

**OF COUNSEL:**

**SCOTT, SULLIVAN, STREETMAN & FOX, P.C.**
2450 Valleydale Road
Birmingham, AL 35244
(205) 967-9675 - Telephone
(205) 967-7563 - Facsimile
fox@sssandf.com - Email for Anthony N. Fox, Esq.
ronnlund@sssandf.com - Email for Robert M. Ronnlund, Esq.


**PLAINTIFF REQUESTS SERVICE OF PROCESS BY CERTIFIED MAIL AT THE FOLLOWING ADDRESSES:**

**TURN KEY SERVICES, INC.**
c/o LEONARD JONES, REGISTERED AGENT
2928 RIVERWOOD LANE
BIRMINGHAM, AL 35243

**PLANTATION APARTMENTS, L.L.C.**
c/o ROBERT G. RANDALL, REGISTERED AGENT
6660 BEAVERCREEK DRIVE
POINT CLEAR, AL 36564